**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-20974-ALTONAGA/TORRES**

ALLIED WORLD NATIONAL ASSURANCE COMPANY,

     *Plaintiff,*

v.

BURTON KATZ, BRENT LEVISON, ELISHA ROTHMAN,
CHRISTOPHER SHERMAN, ROBERT ZANGRILLO,
ARLENE MAHON, and ON POINT GLOBAL, LLC,

     *Defendants.*

_____/

BURTON KATZ, BRENT LEVISON, ELISHA ROTHMAN,
CHRISTOPHER SHERMAN, ARLENE MAHON and
ON POINT GLOBAL, LLC,

     *Counter/Third-Party-Plaintiffs,*

v.

ALLIED WORLD NATIONAL ASSURANCE COMPANY
and SCOTTSDALE INSURANCE COMPANY,

     *Counter/Third-Party Defendants.*

_____/

**SECOND AMENDED ANSWER AND AFFIRMATIVE**
**DEFENSES TO ALLIED WORLD'S COMPLAINT, AMENDED**
**COUNTERCLAIM, AND AMENDED THIRD-PARTY COMPLAINT**

     Pursuant to Fed. R. Civ. P. 15(a), Burton Katz, Brent Levison, Elisha Rothman, Christopher

Sherman, Robert Zangrillo, and Arlene Mahon (the "Insured Persons") and On Point Global, LLC

("OPG") hereby submit their Second Amended Answer and Affirmative Defenses to Allied

World's Complaint, ECF No. 1, and raise the following Amended Counterclaim and Amended

Third-Party Complaint against Allied World and Scottsdale:

## ANSWER

### I.    NATURE OF THE ACTION AND RELIEF SOUGHT

1.     Admitted that Allied World purports to seek declaratory relief; denied that Allied World is entitled to such relief.

2.     Admitted that Katz, Levison, Rothman, Sherman, and Mahon seek coverage in connection with *Federal Trade Commission v. On Point Global, LLC*, No. 19-cv-25046 (S.D. Fla.) ("2019 FTC Action") under Allied World Side-A Policy No. 0311-3285 ("Excess D&O Policy"); otherwise denied.

3.     Admitted that Katz, Levison, Rothman, Sherman, and Mahon seek coverage under the Excess D&O Policy, that Allied World denied coverage for the 2019 FTC Action, and that Allied World believes there is a controversy relating to the Excess D&O Policy. Exhibits I, L, and M to Allied World's Complaint otherwise speak for themselves. All allegations inconsistent with a fair reading or construction of those documents are denied.

4.     Admitted that Allied World purports to seek declaratory relief; denied that Allied World is entitled to such relief.

### II.    PARTIES

5.     Upon information and belief, admitted.

6.     Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

7.     Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

8.     Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

9.       Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

10.      Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

11.      Admitted as to residence and citizenship; otherwise denied as stating a legal conclusion.

12.      Admitted as to incorporation, membership and domicile; otherwise denied.

### III.      JURISDICTION AND VENUE

13.      Upon information and belief, admitted.

14.      Upon information and belief, admitted.

15.      Admitted that Allied World's duties and obligations under the Excess D&O Policy are in dispute.

16.      Admitted that venue is proper and that OPG is a named insured on the Excess D&O Policy; otherwise denied.

### IV.      FACTUAL ALLEGATIONS

#### A.      The 2014 FTC Action

17.      The FTC's amended complaint in *Federal Trade Commission v. Acquinity Interactive, LLC*, No. 14-cv-60166 ("2014 FTC Action") speaks for itself. All allegations inconsistent with a fair reading or construction of the amended complaint are denied.

18.      The amended complaint in the 2014 FTC Action speaks for itself. All allegations inconsistent with a fair reading or construction of the amended complaint are denied.

19.      The "Order" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Order are denied.

20.     The "Order" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Order are denied.

**B.      The 2019 FTC Action**

21.     The "2019 FTC Complaint" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the 2019 FTC Complaint are denied.

22.     The "2019 FTC Complaint" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the 2019 FTC Complaint are denied.

23.     The "2019 FTC Complaint" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the 2019 FTC Complaint are denied.

24.     The "2019 FTC Complaint" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the 2019 FTC Complaint are denied.

25.     The "2019 FTC Complaint" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the 2019 FTC Complaint are denied.

26.     The *ex parte* Notice of Related or Similar Action referenced by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Notice of Related or Similar Action are denied.

27.     The *ex parte* Temporary Restraining Order referenced by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Temporary Restraining Order are denied.

28.     The Order for Preliminary Injunction speaks for itself. All allegations inconsistent with a fair reading or construction of the Temporary Restraining Order are denied.

29.     The "Contempt Motion" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Contempt Motion are denied.

30.     The "Contempt Motion" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Contempt Motion are denied.

31.     The "Contempt Motion" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Contempt Motion are denied.

32.     The "Contempt Motion" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Contempt Motion are denied.

### C.     <u>The Allied World Side-A Policy – Insuring Agreement</u>

33.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

34.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

35.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

36.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

37.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

38.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

39.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

40.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

### D.   Warranty and Representation Letter

41.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied.

42.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied.

43.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied.

44.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied. Also denied to the extent Paragraph 44 states a legal conclusion.

45.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied. Also denied to the extent Paragraph 44 states a legal conclusion.

### E.   Pending or Prior Litigation Exclusion

46.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

### F.   The Insured Persons tender the 2019 FTC Action to Scottsdale and Allied World

47.     Admitted that the Insured Persons requested a defense and indemnity from Scottsdale in connection with the 2019 FTC Action on or around December 23, 2019; otherwise denied.

48.     Admitted that the Insured Persons requested a defense indemnity from Allied World in connection with the 2019 FTC Action on or around December 23, 2019. The

correspondence attached as Exhibit I to Allied World's Complaint speaks for itself. All allegations inconsistent with a fair reading or construction of Exhibit I are denied.

49.     Exhibit J to Allied World's Complaint speaks for itself. All allegations inconsistent with a fair reading or construction of Exhibit J are denied.

50.     Exhibit F to Allied World's Complaint speaks for itself. All allegations inconsistent with a fair reading or construction of Exhibit F are denied.

51.     Exhibit K to Allied World's Complaint speaks for itself. All allegations inconsistent with a fair reading or construction of Exhibit K are denied.

52.     Exhibit L to Allied World's Complaint speaks for itself. All allegations inconsistent with a fair reading or construction of Exhibit L are denied.

53.     Admitted that Allied World acknowledged a **DIC Event.** Exhibit M to Allied World's Complaint otherwise speaks for itself, and all allegations inconsistent with a fair reading or construction of Exhibit M are denied.

54.     Exhibit M to Allied World's Complaint speaks for itself, and all allegations inconsistent with a fair reading or construction of Exhibit M are denied.

## <u>COUNT I</u>
## <u>DECLARATION OF NO COVERAGE UNDER THE ALLIED WORLD SIDE-A POLICY BECAUSE THE WARRANTY BARS COVERAGE FOR THE 2019 FTC ACTION</u>

55.     The Insured Persons and OPG incorporate their responses to Paragraphs 1 through 54 above.

56.     The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied. Also denied to the extent Paragraph 56 states a legal conclusion.

57.     Denied.

58.    Denied.

59.    Denied.

60.    Denied.

61.    The "Warranty" as defined by Allied World speaks for itself. All allegations inconsistent with a fair reading or construction of the Warranty are denied. Also denied to the extent Paragraph 61 states a legal conclusion.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

**COUNT II**
**DECLARATION OF NO COVERAGE UNDER THE ALLIED WORLD SIDE-A POLICY**
**BECAUSE THE PENDING OR PRIOR LITIGATION EXCLUSION BARS COVERAGE**
**FOR THE 2019 FTC ACTION**

67.    The Insured Persons and OPG incorporate their responses to Paragraphs 1 through 54 above.

68.    The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

69.    Without knowledge and therefore denied; also denied to the extent Paragraph 69 states a legal conclusion.

70.    Without knowledge and therefore denied; also denied to the extent Paragraph 70 states a legal conclusion.

71.    Without knowledge and therefore denied; also denied to the extent Paragraph 71 states a legal conclusion.

72.     Denied.

73.     Denied.

74.     Denied.

## COUNT III
## DECLARATION OF NO INDEMNITY COVERAGE

75.     The Insured Persons and OPG incorporate their responses to Paragraphs 1 through 54 above.

76.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

77.     The Excess D&O Policy speaks for itself. All allegations inconsistent with a fair reading or construction of the Excess D&O Policy are denied.

78.     Without knowledge and therefore denied.

79.     Denied.

80.     Denied.

Denied that Allied World is entitled to any relief requested in the WHEREFORE clause (including subparts A through D) following Paragraph 80.

*        *        *

Any allegations that have not been expressly admitted herein are denied.

*        *        *

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*
### Failure to State a Claim Upon Which Relief Can be Granted

Through Count I of the Complaint, Allied World seeks to escape coverage for the 2019 FTC Action based on an alleged breach of warranty. Under Section 12.B. of the Excess D&O

Policy, however, Allied World "irrevocably waived any right it may have to rescind or void [the Excess D&O] Policy, in whole or in part, on any grounds." ECF No. 1-1 at 25 § 12. Count I therefore fails to state a claim for which relief can be granted.

### Second Affirmative Defense
### The "Warranty and Representation Letter" is Extrinsic to the Policy

Upon information and belief, the May 3, 2018 "Warranty and Representation Letter" attached as Exhibit H to Allied World's Complaint was not incorporated into, and does not otherwise form a part of, the Excess D&O Policy or the **Application**.

### Third Affirmative Defense
### Representations and Severability Clause

Under Section 12 of the Excess D&O Policy, no knowledge, statement, or representation made by the Insured Persons or OPG in the **Application** can be imputed to any other **Insured Person** for purposes of coverage:

**12. REPRESENTATIONS AND SEVERABILITY**

**A.** The **Insurer** has relied upon the information contained in the **Application** in issuing this Policy. The **Application** shall be construed as a separate application for coverage by each **Insured Person**. No knowledge, statement or representation made in the **Application** by any **Company** or any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining coverage under this Policy for such other **Insured Person**.

ECF No. 1-1 at 25 § 12.

### Fourth Affirmative Defense
### Waiver/Estoppel

Allied World is barred from asserting coverage defenses it failed to preserve under Section 627.426, Florida Statutes.

### *Fifth Affirmative Defense*
### **Ambiguities**

Allied World may not disclaim its obligations under the Excess D&O Policy because of certain ambiguities drafted by Allied World. Such ambiguities must be interpreted under governing law in favor of coverage.

*     *     *

WHEREFORE, the Insured Persons and OPG respectfully request that this Court: (a) deny the relief sought by Allied World; and (b) award the Insured Persons and OPG their reasonable fees and costs incurred defending same pursuant to applicable law, and grant any additional relief the Court deems equitable, just, and proper.

### **AMENDED COUNTERCLAIM AND**
### **AMENDED THIRD-PARTY COMPLAINT**

The Insured Persons[1] and OPG sue Allied World and Scottsdale (collectively, "Insurers") as follows:

### **<u>NATURE OF THE ACTION</u>**

1.      This is an action for damages arising from the Insurers' failure to defend or indemnify the Insured Persons and OPG in connection with a lawsuit brought by the FTC in 2019.

2.      The Insured Persons and OPG collectively incurred millions of dollars in expenses through years of contentious litigation. Those expenses are compensable under Scottsdale's Primary D&O Policy and Allied World's Excess D&O Policy (defined below).

---

[1] Having assigned his claims and causes of action against the Insurers to Katz, Levison, Rothman, and OPG, Zangrillo does not seek affirmative relief and is not a party to this Amended Counterclaim or Amended Third-Party Complaint.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action involves parties of diverse citizenship and the amount in controversy exceeds $75,000.00 excluding interest, costs, and attorney's fees.

4.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the Insurers breached insurance policies issued and delivered to OPG in Miami, Florida, and a substantial part of the events or omissions giving rise to this controversy occurred in this District.

## THE PARTIES

5.      Burton Katz: Katz, *sui juris*, is domiciled in Florida because he permanently resides in Florida and intends to remain there.

6.      Brent Levison: Levison, *sui juris*, is domiciled in Florida because he permanently resides in Florida and intends to remain there.

7.      Elisha Rothman: Rothman, *sui juris*, is domiciled in Florida because he permanently resides in Florida and intends to remain there .

8.      Christopher Sherman: Sherman, *sui juris*, is domiciled in Florida because he permanently resides in Florida and intends to remain there.

9.      Arlene Mahon: Mahon, *sui juris*, is domiciled in Florida because she permanently resides in Florida and intends to remain there.

10.     On Point Global, LLC: OPG is a Delaware limited liability company with its principal place of business in Miami, Florida. OPG's members are: (a) Levison; (b) Cardozo Holding, LLC; (c) Bronco Family Holdings, LP; (d) Mac Media, Ltd.; and (e) On Point Capital Partners, LLC. Cardozo Holding, LLC is a Nevis limited liability company with its principal place

of business in Miami, Florida. Cardozo Holding, LLC's sole member is Levison. Bronco Family Holdings LP is a Bahamian partnership with its principal place of business in Miami, Florida. Bronco Family Holdings LP's sole members are Katz and his wife, Marjan Katz, who is a permanent resident of Florida. Mac Media, Ltd. is a Belize corporation with its principal place of business in Miami, Florida. On Point Capital Partners, LLC is a Delaware limited liability company with its principal place of business in Miami, Florida. On Point Capital Partners, LLC's sole member is Zangrillo, who is domiciled in Florida because he permanently resides in Florida and intends to remain there.

11.     <u>Scottsdale Insurance Company</u>: Upon information and belief, Scottsdale is an Ohio corporation with its principal place of business in Columbus, Ohio. At all times material to this action, Scottsdale sold insurance policies in Florida.

12.     <u>Allied World National Assurance Company</u>: Upon information and belief, Allied World is a New Hampshire corporation with its principal place of business in New York. At all times material to this action, Allied World sold insurance policies in Florida.

## **GENERAL ALLEGATIONS**

### ***Scottsdale's Primary D&O Policy***

13.     Scottsdale issued a Business and Management Indemnity Policy, bearing Policy No. EKS3294401, to OPG in Miami, Florida, effective May 31, 2019 through May 31, 2020, with a $5,000,000 aggregate limit of liability under the Management Insureds and Company Coverage Section and a $1,000,000 limit under the Fiduciary Coverage Section ("Primary D&O Policy"). ECF No. 1-2 at 3.

14.     Under the Management Insureds and Company Coverage ("MICC") Section of the

Primary D&O Policy, Scottsdale agreed to reimburse the Insured Persons, a/k/a "Management

Insureds," and OPG, a/k/a "Company," as follows:

A. **INSURING CLAUSES**

1. The **Insurer** shall pay the **Loss** of the **Management Insureds** for which the **Management Insureds** are not indemnified by the **Company** and which the **Management Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Management Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Management Insureds** and which the **Management Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Management Insureds** during the **Policy Period** or, if elected, the **Extended Reporting Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

3. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if elected, the **Extended Reporting Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

ECF No. 1-2 at 14 § A.

15.     For purposes of the MICC Section:

a. **Loss** means "damages, judgments, settlements, pre-judgment and post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Management Insureds** under Insuring Clauses 1. or 2. . . . ," subject to certain exceptions. *Id.* at 15-16 § B.8.

b. As modified by Endorsement 19, **Costs, Charges and Expenses** means "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** . . . up to the applicable Limit of Liability" and "cost[s] of investigation." *Id.* at 52 § B.3.

14

c. **Claim** means, *inter alia*, "a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief; [and/or] a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief." *Id.* at 14 § B.1.

d. **Management Insureds** include "all **General Partners, Directors and Officers, Managers**, and employees of the **Company**." *Id.* at 16 § B.9.

e. **Wrongful Acts** include "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by: a. any of the **Management Insureds,** while acting in their capacity as such . . . ; [or] b. any of the **Management Insureds,** while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**." *Id.* at 16-17 § B.12.

16.    Scottsdale also agreed to reimburse the Insured Persons and OPG under the Fiduciary Coverage Section of the Primary D&O Policy, which states:

> **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

*Id.* at 68 § A.1.

17.    For purposes of the Fiduciary Coverage Section, **Insureds** includes **Insured Persons,** which encompasses "any natural persons who were, now are, or shall become a trustee, director, officer or employee of the **Sponsor Company** [OPG]" and "any natural persons for whose **Wrongful Acts** any of the **Insureds** are legally responsible." *Id.* at 24-25 § B.6, B.8.

18.    The relevant prongs of **Loss, Claim,** and **Wrongful Act** are defined in substantially the same manner under the Fiduciary Coverage Section and the MICC Section.

### *Allied World's Excess D&O Policy*

19.    Allied World issued an Executive Forcefield Side 'A' Directors & Officers Excess and Lead Difference-In-Conditions Insurance Policy, bearing Policy No. 0311-3285, to OPG in

Miami, Florida, effective May 31, 2019 through May 31, 2020, with a $3,000,000 aggregate limit

of liability ("Excess D&O Policy"). ECF No. 1-1 at 2.

20.     Under Section 1 of the Excess D&O Policy, Allied World agreed to reimburse the

Insured Persons as follows:

> The **Insurer** shall pay on behalf of the **Insured Persons** the **Non-Indemnified Loss** incurred by the **Insured Persons** arising from any **Claim** first made during the **Policy Period** (or Extended Reporting Period, if applicable) against such **Insured Person** for any **Wrongful Act**; provided such **Claim** is reported to the **Insurer** in accordance with Clause 7 of this Policy.

ECF No. 1-1 at 9 § 1.

21.     **Non-Indemnified Loss** means "**Loss** incurred by any **Insured Person** for which

the **Company** [OPG] . . . : (i) is neither permitted, nor required, to indemnify or advance; (ii)

refuses, or is financially unable, to indemnify or advance; or (iii) fails, within sixty (60) days after

a request by, or on behalf of, the **Insured Person** to indemnify or advance. *Id.* at 21 § 4(w). With

respect to clauses 4(w)(ii) and (iii), the Insured Person(s) seeking coverage must agree to assist

Allied World with subrogation. *Id.*

22.     Allied World's Excess D&O Policy is generally excess over Scottsdale's Primary

D&O Policy, however the Excess D&O Policy "drop downs" if and when Scottsdale denies

coverage:

> Liability shall attach to the **Insurer** under this Policy only after the limits of liability of the **Underlying Policies** have been exhausted due to payment of loss covered thereunder . . . . However, if an **Underlying Insurer** does not pay a **Non-Indemnified Loss** due to a **DIC Event**, this Policy shall, subject to its terms, conditions, and exclusions, drop down and pay such **Non-Indemnified Loss**.

*Id.* at 22 § 6. A **DIC Event** includes, *inter alia*, a "failure of an **Underlying Insurer** to indemnify

any **Insured Person** for the **Non-Indemnified Loss** within sixty (60) days after such

indemnification is requested," and "refusal or denial of any **Underlying Insurer** to provide

coverage for any reason to any **Insured Person** for any portion of the **Non-Indemnified Loss**." *Id.* at 20 § 4(t).

23.     Allied World's Excess D&O Policy also "follows the form" of Scottsdale's Primary D&O Policy, *id.* at 8, but "in the event an **Underlying Policy** provides broader coverage for an **Insured Person** than is provided in [Allied World's Excess D&O Policy], then, notwithstanding anything to the contrary, [Allied World's Excess D&O Policy] is amended to provide coverage in accordance with the broader terms and conditions of such **Underlying Policy**" subject to certain terms of the Excess D&O Policy. *Id.* at 14 § 3.

24.     While indicating that Allied World relied upon certain information contained in the **Application**, the Excess D&O Policy does not reference any particular warranty or representation by OPG and/or any Insured Person(s) other than the **Application** itself. The Excess D&O Policy also prohibits Allied World from: (1) imputing knowledge or representations by OPG or any Insured person against any other Insured Person for purposes of determining coverage; and (2) attempting to rescind or void the Policy, in whole or in part, for any reason:

**12. REPRESENTATIONS AND SEVERABILITY**

A.   The **Insurer** has relied upon the information contained in the **Application** in issuing this Policy. The **Application** shall be construed as a separate application for coverage by each **Insured Person**. No knowledge, statement or representation made in the **Application** by any **Company** or any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining coverage under this Policy for such other **Insured Person.**

B.   The **Insurer** irrevocably waives any right it may have to rescind or void this Policy, in whole or in part, on any grounds.

*Id.* at 25 § 12. **Application** means "any publicly available documents filed by [OPG] with the SEC during the twelve (12) months prior to the Inception Date set forth in Item 2 of the Declarations

17

[May 1, 2019]," which "shall be deemed attached [to the Excess D&O Policy], as if physically attached [thereto], and incorporated [thereto]." *Id.* at 20 § 4(s).[2]

### *Initial Stages of the 2019 FTC Action*

25.     On December 9, 2019, the FTC filed a Complaint for Permanent Injunction and Other Equitable Relief against OPG, the Insured Persons, and other entities concerning alleged violations of 15 U.S.C. § 45(a). In essence, the FTC accused OPG and the Insured Persons of operating transactional websites (*i.e.*, renewing licenses and checking eligibility for housing benefits) that did not deliver the services they purported to. The FTC sought to hold the Insured Persons individually liable for the alleged violations, alongside OPG and other "Corporate Defendants" purportedly controlled by the Insured Persons.

26.     On December 13, 2019, the Court appointed Melanie Damien as the Receiver of OPG and other Corporate Defendants in the 2019 FTC Action. Ex. A, Sealed Order Granting *Ex Parte* TRO & Order to Show Cause, at Page 11 of 55 § 11.[3]

27.     This Court entrusted the Receiver with various obligations, including a specific duty to "[i]nvestigate any claims the Receiver on behalf of the Receivership Defendants [i.e., OPG and certain 'Corporate Defendants'] may possess against third parties . . . ." *Id.* at Page 12 of 55 § 12.

28.     This Court also authorized the Receiver and certain personnel to be compensated from assets held by the Receivership Entities, including OPG. *Id.* at Page 18 of 55 § 19.

---

[2] At all relevant times, OPG was a private company that did not file documents with the SEC during the twelve months prior to the Inception Date.

[3] The temporary (five-day) seal was lifted on or around December 20, 2019.

*The Insurers' Coverage Denials*

29.     The Insured Persons tendered the 2019 FTC action to Scottsdale and Allied World for a defense and indemnity on December 23, 2019. *See* ECF No. 1-10 at 1; ECF No. 1-9 at 3.

30.     Scottsdale did not dispute the Insured Persons sought coverage for **Loss** incurred as **Management Insureds** and/or **Insureds** arising from a **Claim** for a **Wrongful Act** first made and reported during the **Policy Period**. On December 31, 2019 and January 15, 2020, however, Scottsdale denied coverage under the MICC Section based predominantly on a professional services exclusion. ECF No. 1-10 at 5; Ex. B, Jan. 15, 2020 Ltr. from A. Zwibel, at 4-5; *see also* Ex. C, Feb. 5, 2020 Ltr. from K. Little, at 1-3. Scottsdale did not state a position regarding the Fiduciary Coverage Section. *See generally id.*

31.     The Insured Persons advised Allied World of Scottsdale's position and reiterated their request for coverage under the Excess D&O Policy.

32.     Allied World similarly did not dispute the Insured Persons sought coverage for **Non-Indemnified Loss** incurred as **Insured Persons** arising from a **Claim** for a **Wrongful Act** first made and reported during the **Policy Period**. On March 4, 2020, however, Allied World declined to provide coverage based on a May 3, 2018 "Warranty Letter and Representation" letter from On Point Global, LLC and a "Prior and Pending Litigation Exclusion" in the Excess D&O Policy, advising the Insured Persons to "take whatever steps [were] necessary to protect interests, without reference to the [Excess D&O Policy]." ECF No. 1-13 at 1.

33.     In the course of denying coverage, Allied World nonetheless recognized the existence of a **DIC Event** based on Scottsdale's "refusal or denial . . . to provide coverage for any reason to any **Insured Person** for any portion of the **Non-Indemnified Loss**." *Id.* at 4.

34.     By letters dated May 20, 2020 and September 29, 2020, the Receiver also asserted a formal claim and demand under and against Scottsdale's Primary D&O Policy and Allied World's Excess D&O Policy on behalf of OPG. Ex. D, May 20, 2020 Ltr. from D. Cimo, at 2.[4]

35.     The Insurers failed and refused to indemnify OPG.

### *Outcome of the 2019 FTC Action*

36.     In light of the Insurers' respective coverage denials, the Insured Persons and OPG were forced to fund their own defense for approximately four years in the 2019 FTC Action. OPG also had to compensate the Receiver and other entities from its own assets.

37.     The Insured Persons' defense expenses were reasonable under the circumstances. Of the six Insured Persons, only Katz and Levison were held individually liable for damages and/or the practices of OPG. Rothman and Sherman became subject to a permanent injunction, but neither they nor Zangrillo or Mahon became personally liable for damages and/or the practices of OPG. Following a bench trial in November 2021, the Court found that OPG and other defendants were jointly and severally liable for up to $102,768,235.47 in compensatory remedies, but the ultimate award was reduced to approximately $19,599,235.68—an $83,168,199.79 reduction in total exposure.

38.     OPG also incurred millions of dollars in legal expenses vis-à-vis the Receiver and other entities, which were paid from OPG's receivership estate. Those expenses were Court-approved and therefore reasonable.

---

[4] OPG expects a copy of the Receiver's September 29, 2020 letter to be produced by the Insurers during discovery.

***The Insured Persons' Indemnification Claim***

39.     On February 22, 2022, the Insured Persons requested indemnification of their defense expenses from OPG via the Receiver pursuant to an indemnification clause of the company's Second Amended and Restated Limited Liability Company Agreement ("Indemnification Claim"). The Indemnification Claim encompassed all losses, liability, and damages incurred by the Insured Persons, including legal fees and monetary damages arising from the 2019 FTC Action.

40.     On March 29, 2022, the Receiver rejected the Insured Persons' Indemnification Claim. The Receiver concluded that OPG was not obligated to indemnify the Insured Persons because they failed to act in the company's best interests.

41.     The Insured Persons' defense expenses remain non-indemnified.

42.     Scottsdale has not indemnified OPG for the final award or amounts paid to the Receiver or other entities from the receivership estate.

43.     The Insured Persons and OPG engaged the undersigned counsel to represent them in this action and agreed to pay a reasonable fee for services rendered.

44.     All conditions precedent to this action have been performed, waived, or have otherwise occurred.

## COUNT I – BREACH OF CONTRACT
### (Insured Persons against Scottsdale)

45.     The Insured Persons reallege Paragraphs 1 through 44 above.

46.     <u>Enforceable Contract</u>: At all times material to this action, the Insured Persons were covered under Scottsdale's Primary D&O Policy, which is an enforceable contract under the laws of the State of Florida. All conditions precedent for coverage under the Primary D&O Policy have been satisfied.

47.     <u>Duty</u>: The Primary D&O Policy obligates Scottsdale to, *inter alia*, indemnify the Insured Persons as alleged in Paragraphs 1 through 46, except as may be limited by exclusions or other limitations.

48.     <u>Breach</u>: Scottsdale, through the acts of its agent, servants, and/or employees, failed to perform its obligations under the Primary D&O Policy as alleged herein and thus breached the Primary D&O Policy by failing to indemnify the Insured Persons in relation to the 2019 FTC Action. No exclusions or limitations apply.

49.     <u>Damages</u>: As a direct, foreseeable, and proximate result of Scottsdale's breaches of its obligations under the Primary D&O Policy, the Insured Persons suffer and continue to suffer damages.

WHEREFORE, Katz, Levison, Rothman, Sherman, and Mahon demand judgment against Scottsdale for damages in an amount to be proven at trial, including pre- and post-judgment interest, attorney's fees pursuant to Section 626.9373, Florida Statutes[5] and/or applicable law, and any further relief this Court deems equitable, just, and proper.

## COUNT II – BREACH OF CONTRACT
### (Insured Persons against Allied World)

50.     The Insured Persons reallege Paragraphs 1 through 44 above.

51.     <u>Enforceable Contract</u>: At all times material to this action, the Insured Persons were covered under Allied World's Excess D&O Policy, which is an enforceable contract under the laws of the State of Florida. All conditions precedent for coverage under the Excess D&O Policy have been satisfied.

---

[5] Scottsdale issued the Primary D&O Policy and denied coverage before Section 626.9373 was repealed (prospectively) via Chapter 2023-15, Section 11, Laws of Florida. *See Baptist Coll. of Fla. Inc. v. Church Mut. Ins. Co. SI*, No. 22cv158, 2023 WL 4358785, at *6-7 (N.D. Fla. June 23, 2023).

52. <u>Duty</u>: The Excess D&O Policy obligates Allied World to, *inter alia*, indemnify the Insured Persons as alleged in Paragraphs 1 through 46, except as may be limited by exclusions or other limitations.

53. <u>Breach</u>: Allied World, through the acts of its agent, servants, and/or employees, failed to perform its obligations under the Excess D&O Policy as alleged herein and thus breached the Excess D&O Policy by failing to indemnify the Insured Persons in relation to the 2019 FTC Action. No exclusions or limitations apply.

54. <u>Damages</u>: As a direct, foreseeable, and proximate result of Allied World's breaches of its obligations under the Excess D&O Policy, the Insured Persons suffer and continue to suffer damages.

WHEREFORE, Katz, Levinson, Rothman, Sherman, and Mahon demand judgment against Allied World for damages in an amount to be proven at trial, including pre- and post-judgment interest, attorney's fees pursuant to Section 627.428, Florida Statutes[6] and/or applicable law, and any further relief this Court deems equitable, just, and proper.

### COUNT III – BREACH OF CONTRACT
**(OPG against Scottsdale)**

55. OPG realleges Paragraphs 1 through 44 above.

56. <u>Enforceable Contract</u>: At all times material to this action, OPG was covered under Scottsdale's Primary D&O Policy, which is an enforceable contract under the laws of the State of Florida. All conditions precedent for coverage under the Primary D&O Policy have been satisfied.

---

[6] Allied World issued the Excess D&O Policy and denied coverage before Section 627.428 was repealed (prospectively) via Chapter 2023-15, Section 11, Laws of Florida. *See Baptist Coll.*, 2023 WL 4358785, at *6-7.

57.　<u>Duty</u>: The Primary D&O Policy obligates Scottsdale to, *inter alia*, indemnify OPG as alleged in Paragraphs 1 through 46, except as may be limited by exclusions or other limitations.

58.　<u>Breach</u>: Scottsdale, through the acts of its agent, servants, and/or employees, failed to perform its obligations under the Primary D&O Policy as alleged herein and thus breached the Primary D&O Policy by failing to indemnify OPG in relation to the 2019 FTC Action. No exclusions or limitations apply.

59.　<u>Damages</u>: As a direct, foreseeable, and proximate result of Scottsdale's breaches of its obligations under the Primary D&O Policy, OPG suffered and continues to suffer damages.

WHEREFORE, OPG demands judgment against Scottsdale for damages in an amount to be proven at trial, including pre- and post-judgment interest, attorney's fees pursuant to Section 626.9373, Florida Statutes[7] and/or applicable law, and any further relief this Court deems equitable, just, and proper.

## **<u>JURY TRIAL DEMAND</u>**

The Insured Persons and OPG request a trial by jury on all issues so triable.

---

[7] Scottsdale issued the Primary D&O Policy and denied coverage before Section 626.9373 was repealed (prospectively) via Chapter 2023-15, Section 11, Laws of Florida. *See Baptist Coll.*, 2023 WL 4358785, at *6-7.

24

Case No.: 1:20-cv-20974-ALTONAGA/TORRES

Respectfully submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577 3558 *facsimile*

/s/ Rochelle N. Wimbush
**Rochelle N. Wimbush, Esq.**
Florida Bar No. 74200
rwimbush@vpm-legal.com
smcgee@vpm-legal.com
**Alexander I. Loy, Esq.**
aloy@vpm-legal.com
lmulhall@vpm-legal.com
*Counsel for Burton Katz, Brent Levison,*
*Elisha Rothman, Christopher Sherman,*
*Robert Zangrillo, Arlene Mahon and On*
*Point Global, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

July 8, 2024, on all counsel or parties of record on the Service List below.

/s/ Rochelle N. Wimbush
**Rochelle N. Wimbush, Esq.**

## SERVICE LIST

Michael DiFebbo, Esq.
Kennedys CMK LLP
1600 Market Street, Suite 1410
Philadelphia, PA 19103
267-479-6713
Michael.difebbo@kennedyslaw.com
*Pro Hac Vice Co-Counsel for Allied World*
*Assurance Company*

Andres Avila, Esq.
Kennedys CMK LLP
570 Lexington Avenue, 8th Floor
New York, NY 10022
845-422-9848
Andres.avila@kennedyslaw.com
*Pro Hac Vice Co-Counsel for Allied World*
*Assurance Company*

Case No.: 1:20-cv-20974-ALTONAGA/TORRES

Sabrina Haurin, Esq.
Evan C. Ecos, Esq.
Bailey Cavalieri LLC
10 W. Broad Street, Suite 2100
Columbus, OH 43215-3422
614-221-3155
shaurin@baileycav.com
eecos@baileycav.com
*Pro Hac Vice Co-Counsel Scottsdale Ins. Co.*

Josh Levy, Esq.
Kennedys CMK LLP
1395 Brickell Avenue, Suite 640
Miami, FL 33131
305-371-1111
josh.levy@kennedyscmk.com
*Co-Counsel for Allied World Assurance Company*

Rochelle N. Wimbush, Esq.
Alexander I. Loy, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*
rwimbush@vpm-legal.com
aloy@vpm-legal.com
lmulhall@vpm-legal.com
smcgee@vpm-legal.com
*Counsel for Burton Katz, Brent Levison, Elisha Rothman, Christopher Sherman, Robert Zangrillo, Arlene Mahon and On Point Global, LLC*

Michael A. Packer, Esq.
Marshall Dennehey, P.C.
2400 E. Commercial Blvd., Suite 1100
Ft. Lauderdale, FL 33308
954-847-4920
954-627-6640 fax
mapacker@mdwcg.com
mmalvarez@mdwcg.com
nnsaffie@mdwcg.com
pleadingsftl@mdwcg.com
*Co-Counsel Scottsdale Ins. Co.*